UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------

In re:  : Chapter 11

CHAMPION MOTOR GROUP, INC., : Case No. 09-71979 (AST)

Debtor.

------------------------------

### OBJECTION OF MANUFACTURERS AND TRADERS TRUST COMPANY TO THE DEBTOR'S MOTION FOR FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

Manufacturers and Traders Trust Company ("M&T"), by its attorneys, Hughes Hubbard & Reed LLP, hereby objects to the motion of the Debtor, Champion Motor Group, Inc. ("Champion"), for a final order authorizing the use of cash collateral (the "Motion").

### Preliminary Statement

By its Motion, Champion seeks authorization to use M&T's cash collateral, which secures Champion's obligations to M&T under a loan agreement between M&T and Champion. Champion used advances under the loan agreement to finance its acquisition of new and used motor vehicles in connection with its business of selling new and pre-owned luxury automobiles, and is now indebted to M&T in an amount (the "M&T Debt") that, due to Champion's pre-petition misconduct, far exceeds the value of the remaining vehicle inventory. As Champion acknowledges in its Motion, M&T has a lien on all of Champion's personal property (the "Collateral") to secure repayment of the M&T Debt. (Motion ¶ 3.) The Collateral includes, among other things, all accounts, all deposit accounts, all receivables and all inventory.

The value of M&T's collateral is declining because Champion is operating at a substantial loss, and is bleeding cash. The replacement liens and any extra cash collected over

and above Champion's budgeted expenditures that Champion proposes as adequate protection fail to address this ongoing decline in value, which Champion acknowledges will continue for the foreseeable future. In the face of continuing losses, there is little realistic hope that whatever combination of replacement liens and priority claims that Champion may offer will have any value at all, let alone the "indubitable equivalent" value that is the touchstone of adequate protection under the Bankruptcy Code. Consequently, Champion's Motion should be denied.

## Background

1. Champion and M&T are parties to a $30,000,000 revolving floor plan financing loan agreement dated as of August 8, 2007 between M&T and Champion (the "Loan Agreement"). A true and correct copy of the Loan Agreement is annexed hereto as Exhibit A. M&T is the only lender under the Loan Agreement and has not assigned any interest under the Loan Agreement.

2. M&T entered into the Loan Agreement at the request of and for the benefit of Champion, to finance Champion's acquisition of new and used motor vehicles to be used in the business of selling new and pre-owned luxury automobiles.

3. Champion's obligations under the Loan Agreement are personally guaranteed by Gary Brustein and Michael Todd, who are the President and Vice President of Champion, respectively, pursuant to Unlimited Guaranties, each dated August 8, 2007.

4. As security for its obligations under the Loan Agreement, Champion granted M&T a lien on and a security interest in the Collateral under a Security Agreement dated as of August 8, 2007 between Champion and M&T (the "Security Agreement"). A true and correct copy of the Security Agreement is annexed hereto as Exhibit B. "Collateral" under the Security Agreement is defined as all of Champion's present and future right, title and interest in

any and all personal property of Champion, whether now existing or hereafter created, acquired and wherever located. The Collateral includes:

> (i) accounts; including the M&T Bank Floor Plan System Equity Offset Account; (ii) chattel paper; (iii) goods; (iv) inventory; (v) equipment; (vi) fixtures; (vii) farm products; (viii) instruments; (ix) investment property; (x) documents; (xi) commercial tort claims; (xii) deposit accounts; (xiii) letter-of-credit rights; (xiv) general intangibles; (xv) supporting obligations; and (xvi) proceeds and products of the foregoing.

On August 13, 2007, M&T filed financing statements under the Uniform Commercial Code against Champion with the Secretary of State of the State of New York to perfect its security interest in the Collateral.

5. On March 26, 2009 (the "Filing Date"), Champion filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. Champion continues to operate and manage its business as a debtor-in-possession pursuant to the provisions of chapter 11.

6. As of the Filing Date, Champion owed M&T a total of not less than $21,000,000 under the Loan Agreement and Revolving Demand Note dated August 8, 2007 (the "Note") by Champion in favor of M&T. A true and correct copy of the Note is annexed hereto as Exhibit C.

7. Despite Champion's contention to the contrary, as of the Filing Date, all of Champion's cash on hand was Collateral or proceeds of Collateral and therefore constituted cash collateral in which M&T has a security interest ("Cash Collateral").

## Champion Should Not Be Permitted to Use M&T's Cash Collateral

8. Under the Motion, Champion seeks to use Cash Collateral to fund its operations past the period established by the April 6, 2009 interim order, authorizing Champion

to use Cash Collateral through the date of a final hearing scheduled for April 22, 2009 (the "Interim Order").

9. Champion's request to use the Cash Collateral should be denied because M&T has not consented to Champion's proposed use of Cash Collateral and because Champion cannot carry its burden of showing that it can provide M&T with adequate protection.

10. Section 363(c)(2) of the Bankruptcy Code expressly prohibits a debtor-in-possession from using cash collateral without the secured party's consent. Section 363(e) of the Bankruptcy Code further provides that:

> [N]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used sold, or leased, by the trustee, the court, with or without a hearing shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e). Thus, since M&T does not consent to Champion's use of Cash Collateral, Champion must provide adequate protection to M&T before it can receive this Court's authorization to use Cash Collateral.

11. "Adequate protection" is intended to safeguard the value of a secured creditor's claim as it existed on the petition date. In re Campbell Sod, Inc., 378 B.R. 647, 653 (Bankr. D. Kan. 2007); In re Windsor Hotel, L.L.C., 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003). Before permitting a lender's cash collateral to be used by a debtor, courts will require a debtor to ensure that a secured lender will be able to recover the value of its collateral upon confirmation of a debtor's plan of reorganization. In re O.P. Held, Inc., 74 B.R. 777 (Bankr. N.D.N.Y. 1987).

12. Section 361 of the Bankruptcy Code sets forth three nonexclusive methods for establishing adequate protection in connection with the use of cash collateral under Section 363: (i) cash payments to account for "decrease[s] in the value of" the collateral, (ii) additional or replacement liens to account for "decrease[s] in the value of" the collateral or (iii) other relief

that will permit the secured party to realize the "indubitable equivalent" of the value of the collateral. If the debtor cannot provide adequate protection to the secured creditor, the debtor must be prohibited from using the secured creditor's cash collateral. In re Megan-Racine Assocs., Inc., 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996).

13. The debtor bears a heavy burden to demonstrate adequate protection; the standard is one of "clear and convincing evidence," not a mere preponderance. In re Sheehan, 38 B.R. 859, 868 (Bankr. D.S.D. 1984); O.P. Held, 74 B.R. 777, 784. Moreover, adequate protection cannot be premised upon speculation, but rather must be based upon facts or reasonable projections grounded on solid evidence. See In re Mosello, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996).

**Champion Had No Unencumbered Pre-Petition Property**

14. Champion is unable to provide M&T with adequate protection because it does not have any unencumbered property on which it can grant M&T replacement liens. On its Schedules, filed on April 13, 2009 and amended on April 15, 2009, the Debtor claims to have over $21,000,000 in personal property and claims on Schedule D that the value of M&T's Collateral is only $9,304,794. Presumably this is an effort by the Debtor to show that it has nearly $12,000,000 in unencumbered assets to grant replacement liens on in favor of M&T.

15. However, the Debtor fails to list several categories of property that are also part of M&T's Collateral that when added to M&T's Collateral, greatly reduces, if not wipes out entirely, the $12,000,000 "surplus." Schedule B states that the Debtor has Used Vehicle Inventory in the amount of $7,608,571.36, which is not listed on Schedule D as being part of M&T's Collateral. As mentioned in paragraph 4, supra, M&T has a security interest in all of Champion's "inventory," which includes the Used Vehicle Inventory listed on Schedule B. The Debtor includes several other types of personal property on Schedule B that it omits from

M&T's Collateral on Schedule D despite evidence to the contrary, such as a Payroll Account ($32,494.13) and a Used Vehicle Purchase Account ($667,001) that both fall under M&T's security interest in all "deposit accounts", Machinery and Equipment ($618,134.17) and a Customer Deposit Account valued at $1,337,253.50, containing what may be as much as $1,000,000 of proceeds belonging to M&T. Thus, approximately $10 million should be added to M&T's Collateral on the Schedules and deducted from the claimed surplus.

16. The Debtor includes among its personal property $462,117,90 for "Miscellaneous Office Furnishings, Fixtures", $551,934.58 for "Building Improvements" and $941,268.03 for "Leasehold Improvements" that are covered by M&T's security interest to the extent they constitute equipment or fixtures, under the UCC, but which have not been listed on Schedule D as being part of M&T's collateral. Assuming, for sake of argument, that they are not Collateral, the Debtor ascribes values to these types of personal property that are questioned by M&T as being overly optimistic. These book values are likely inflated at worst, or are types of property where a secured party's attempts to foreclose on a security interest granted by a replacement lien would likely be unsuccessful at best.

### Champion's Suggestion that Sufficient Unencumbered Cash May Appear Post-Petition is Pure Speculation

17. Champion also offers to "maintain and cash [sic] it collects over and above the authorized expenditures for the benefit of M&T" as part of its adequate protection. (Motion ¶ 13.) As is discussed in more detail in paragraphs 20-24, infra, Champion is operating at a loss and does not have any cash "over and above the authorized expenditures," so the offer of this type of adequate protection is insufficient.

18. Champion also offers to maintain "the value of its Business" through such expenditures as an additional piece of adequate protection to be offered to M&T. (Motion ¶13.) This is a conclusory statement by Champion; nowhere in its Motion does it explain how its

continued operation of the business preserves any value in the Debtor's estate, and as discussed in paragraphs 20-24, <u>infra</u>, every day that the Debtor operates it causes the estate to lose value.

19. Simply put, Champion understates the breadth of M&T's security interest and overstates the value of its personal property. The Debtor does not have unencumbered property to which M&T's replacement lien might attach, nor can it demonstrate that any of its other types of adequate protection offered have any actual value, let alone value that would permit M&T to realize the "indubitable equivalent" of its interest in the existing Cash Collateral.

## **M&T's Collateral is Declining Rapidly in Value**

20. As Champion itself conceded in its initial proposed budgets, Champion expected to operate at an <u>average</u> <u>monthly</u> <u>loss</u> of $107,745 during the 90 days following the Filing Date. It now appears that actual losses during the first 30 days of the case are running at twice this rate. Attached as Exhibit D hereto is a budget document provided by the Debtor on April 17, 2009, showing a loss in excess of $200,000 in the period since the filing date. Clearly, there is no way of funding losses of this magnitude, except through expenditure of any remnant of cash or other value to which M&T's pre-petition liens or replacement liens might attach.

21. Against this background, the reality is that this Debtor will be shutting down for lack of cash within weeks.

## **The Value of M&T's Collateral Deteriorates as Champion Fails to Make New Sales**

22. M&T's interest in its Collateral is further jeopardized by Champion's steady decline in orders and dismal financial projections for 2009. Champion's sales have declined every month since at least August 2008.

23. Champion's optimistic financial projections are based on the assumption that Champion will sell 25-30 cars per month. According to M&T's financial advisors, in the 21 days since the Filing Date, Champion has sold only 8 cars. Although Champion is apparently

content to bet M&T's money on the proposition that the populace will suddenly realize that they want to buy Bentleys and Lamborghinis from Champion, M&T declines to join in this wager.

24. M&T has not agreed to fund any additional advances under the Loan Agreement. <u>Champion has no outside source of financing currently</u>, and once it has burned through M&T's Cash Collateral in short time, it will be unable to operate its business.

25. In sum, this is a case where there is no equity cushion of any kind, and the Debtor is simply living hand to mouth, using M&T's collateral to prolong the exercise. At the end of the day, if the Debtor's motion to use M&T's cash collateral is granted, it will only be the depletion of M&T's Cash Collateral that financed Champion's short-lived adventure as a chapter 11 debtor in possession. Any such scenario would be the very opposite of adequate protection under the Bankruptcy Code.

## **Waiver of Memorandum of Law**

Because this objection presents no novel issues of law and the authorities relied upon are set forth herein, Counsel respectfully request that the Court waive the requirement for the filing of a separate memorandum of law in support of this Objection pursuant to Local Bankruptcy Rule 9013-1(b).

## **Conclusion**

For all of the foregoing reasons, M&T respectfully requests that the Court:

(a) deny the Motion;

(b) prohibit the Debtor from using any of M&T's Cash Collateral; and

(c) grant M&T such other and further relief as the Court deems just and proper.

Dated: New York, New York
       April 20, 2009

HUGHES HUBBARD & REED LLP

By: /s/ David W. Wiltenburg
    David W. Wiltenburg
    Vilia Hayes
    W. Peter Beardsley

One Battery Park Plaza
New York, New York 10004
(212) 837-6000

Attorneys for Manufacturers and Traders Trust Company