ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 603-6300
Facsimile: (212) 956-2164
**Robert R. Leinwand**

*Attorneys for the Debtor and Debtor in Possession*

Hearing Date: August 3, 2009 at 2:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
In re:                                                                    :     Chapter 11
                                                                              :
                                                                              :     Case No.: 09-71979 (AST)
**CHAMPION MOTOR GROUP, INC.**,                    :
                                                                              :
                            Debtor.                                   :
                                                                              :
-------------------------------------------------------- X

### APPLICATION FOR AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING THE DEBTOR TO SETTLE AND COMPROMISE CLAIMS AND VOLUNTARILY DISMISSING ADVERSARY PROCEEDING <u>PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7041</u>

TO THE HONORABLE ALAN S. TRUST,
UNITED STATES BANKRUPTCY JUDGE**:**

   **Champion Motor Group, Inc.**, debtor and debtor in possession in the above-captioned case (the "Debtor"), by and through its attorneys, **Robinson Brog Leinwand Greene & Gluck P.C.**, hereby submits this application ("Application"), pursuant to Federal Rules of Bankruptcy Procedure 9019 and 7041, for an Order of this Court authorizing the Debtor to settle and compromise certain claims asserted in an adversary proceeding commenced against Manufacturers Traders and Trust Company ("M&T") and voluntarily dismissing such adversary

443331

proceeding pursuant to Federal Rule of Bankruptcy Procedure 7041. In support of the Motion, the Debtor respectfully sets forth as follows:

1. By this Application, the Debtor seeks to settle and compromise certain claims it has raised in its adversary proceeding entitled *"Champion Motor Group, Inc. against Manufacturers Traders and Trust Company"* (Adversary Proceeding No. 09-08210 (AST)), (the "Adversary Proceeding"). As set forth herein, the proposed settlement which will result in the dismissal with prejudice of the Adversary Proceeding. The Debtor submits that such dismissal is fair and reasonable under the circumstances, and is part of an overall agreement to facilitate the sale of the secured debt held by M&T to a Lender who is willing to work with the Debtor towards the successful consummation of a Plan of Reorganization in this case. More importantly, the acquisition of M&T's secured claims by Champion Funding, LLC ("Funding") will result in the Debtor having full access, for the first time since the commencement of this case, to floor plan financing, and will permit the Debtor to rapidly "ramp up" its inventory and sales capacity as soon as possible. Given the fact that the acquisition of M&T's claims by Funding paves the way for the Debtor to reinvigorate its business, and in view of substantial issues raised by M&T in its Motion for Summary Judgment in the Adversary Proceeding, it is clear to the Debtor that it is an appropriate exercise of its business judgment to dismiss its lawsuit against M&T with prejudice, and to forgo its possible claims. Overall, the Debtor believes that this resolution represents a major step forward toward the successful reorganization of the Debtor.

**Background**

2. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 26, 2009 (the "Petition Date").

443331

3. The Debtor has continued in possession of its property and the operation and management of its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request has been made for the appointment of a trustee or examiner, and no Official Committee of Unsecured Creditors has been appointed in this case.

5. This Court has jurisdiction over this motion under 28 U.S.C. §1334. Venue of this proceeding is proper pursuant to 28 U.S.C. §1409. This matter is a core proceeding.

6. The predicate for the relief requested herein are Rules 9019(a) and 7041 of the Federal Rules of Bankruptcy Procedure.

7. The Debtor is a New York corporation engaged in the business of selling "high-end" new and used cards. The Debtor is Long Island's only authorized Bentley and Lamborghini dealership. The Debtor at one time employed more than sixty-five (65) people, but since the commencement of the case, has reduced his head count to approximately thirty-six (36) as part of an overall effort to streamline its operations and reduce expenses.

8. Prior to the filing of the Petition on or about August 8, 2007, M&T and the Debtor entered into a $30,000,000 revolving floor plan of credit evidenced by a $30,000,000 Revolving Demand Note, a Loan Agreement and a Security Agreement, all dated August 8, 2007. Pursuant to the above Agreements, M&T made secured loans to the Debtor to provide it with floor plan financing and allow the Debtor to acquire inventory for sale and parts for service department and otherwise operate its business.

9. As of the Petition Date, the Debtor's Schedules reflect that an outstanding indebtedness owed to M&T of $18,000,000 with collateral securing the obligation valued at approximately $9,000,000 (at book value). The Debtor also had approximately $400,000 in its

443331

Operating Account which M&T claimed constituted its cash collateral. The Debtor filed a Motion seeking authorization to use cash collateral in accordance with the Proposed Budget. The Motion was resolved by a series of Consent Orders whereby the Debtor was authorized to use these funds for the operation of its business, and provided certain protections for M&T consisting principally of replacement liens on the Debtor's post-petition assets to the extent of a usage of cash collateral.

10. On or about May 26, 2009, the Debtor commenced the Adversary Proceeding against M&T alleging M&T had received preferential transfers when it was paid proceeds from the sales of vehicles pursuant to a stipulation entered into in State Court. The alleged preference totaled approximately $5,000,000 in sales proceeds paid in the ninety (90) days prior to the filing of the Petition, plus the value of the transfer of titles to certain inventory made to M&T within that same period. The Debtor sought judgment against M&T consisting of the recovery or the cash sales proceeds of approximately $5,000,000 paid to M&T, plus a judgment for the value of the vehicles relating to the titles turned over to M&T. In addition, the Adversary Proceeding also sought certain declaratory relief with respect to M&T's assertion of a lien on other alleged collateral, including its allegation that it was secured in the account which held the Debtor's customer deposits. The Adversary Proceeding also sought a declaration regarding the relative rights of the Debtor and M&T with respect to the franchise agreement between the Debtor and Bentley Motors and Lamborghini. As discussed herein, on June 24, 2009, M&T filed a motion to dismiss the Adversary Proceeding, or for summary judgment.

11. Due to disputes between the Debtor and M&T, under both the aforementioned state court stipulation, and under the cash collateral order approved by the Court, the Debtor was required to pay M&T 100% of the cash proceeds received from the sales of M&T's inventory

443331

during the Debtor's Chapter 11 case. As a result, the Debtor operated on a limited budget. More importantly, the Debtor did not have a source of funding in order to acquire new inventory. Under the arrangement between the Debtor and M&T, the Debtor was slowly but certainly liquidating its inventory for the benefit of M&T. Without a way for the Debtor to purchase new inventory, its ability to successfully reorganize was substantially curtailed.

12. In an effort to remedy this situation, and given the fact that M&T did not express any interest in funding the Debtor's operations in the Chapter 11 case, the Debtor undertook an extensive effort to seek out new sources of financing. As a result of that effort, the Debtor located Funding, a newly formed entity consisting of principals David Luce and Antoine Dominic, who agreed to establish a line of credit in the amount of $6,000,000 as new debtor in possession financing. However, Champion Funding, LLC required as a condition of the funding, that the Debtor grant to Champion Funding a first priority lien on the dealership agreement between the Debtor and Bentley and Lamborghini. Since M&T already held a collateral security interest with respect to the Dealership Agreement, approval of the financing required that M&T's interest in this collateral be "primed". The Debtor filed a motion seeking approval of this "priming" financing.

13. M&T interposed an Objection to the DIP Motion. In addition, AFP Seventeen Corp., successor to Bank of America, and John Marciano, a former principal of the Debtor, also objected to the DIP Motion.

14. A hearing on the Debtor's contested Motion for approval for the debtor in possession financing was scheduled for July 15, 2009. Prior and subsequent to the hearing, Funding and M&T entered into negotiations with a view toward Funding acquiring M&T's secured position. Those negotiations have resulted in an agreement for the acquisition of M&T's

443331

secured claims and rights under its Loan Agreement against the estate. The agreement for Funding to acquire M&T's position has been executed and is being held in escrow pending the closing and payment of the purchase price. However, as a condition of the closing of this transaction, M&T has required voluntary dismissal with prejudice of the Adversary Proceeding. The Debtor believes that the dismissal of the Adversary Proceeding with prejudice is in the Debtor's best interests and substantially increases the Debtor's ability to reorganize in the Chapter 11 case. Accordingly, the Debtor has agreed, subject to this Court's approval, to dismiss the Adversary Proceeding with prejudice.

**Statement of Law**

15. Compromises and settlements are a normal part of the bankruptcy process. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 US 414, 424 (1968). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally, which is to encourage settlements." *In re Jackson Brewing Company*, 624 F.2d 599 (5th Cir. 1980). "Resolution of claims through settlement furthers the goals of Bankruptcy Administration to liquidate estate assets as rapidly as possible, consistent with obtaining the best possible realization upon available assets, and without undue waste without needless or fruitless litigation". *In re Carla Leather, Inc.* 44 B.R. 457, 471(Bankr. S.D.N.Y 1984); aff'd, 50 B.R. 764 S.D.N.Y. 1985. While the Debtor is free to pursue litigation on behalf of the estate "[i]t is to exercise prudence, and at the same time be in a position so as to act on settlement opportunity, when that opportunity arises." *Id.* 44 B.R. at 472.

16. Bankruptcy Rule 9019(a) permits the Court to approve a compromise or a settlement. The Rule provides:

443331

> Compromise. On motion of a trustee after notice and a hearing, the court may approve a compromise or a settlement. Notice shall be given to creditors, the debtor, and indentured trustees as provided in Rule 2002, and to any other entity as the Court may direct.

Neither Bankruptcy Rule 9019 nor any other section of the Code explicitly sets forth the standards by which a Court is to evaluate a proposed settlement for approval.

17. However, the standards for approval of settlements in bankruptcy are well established in precedent, focusing on the proposed settlement's reasonableness and fairness to creditors. In *Anderson,* 390 U.S. 414, the seminal case for approval of settlements in bankruptcy cases, the Supreme Court concluded that the Trial Court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> "There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the Bankruptcy Judge has appraised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the Judge should form an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation."

*Anderson*, 309 U.S. at 424 (citations omitted).

18. The United States Court of Appeals for the Second Circuit has stated that the responsibility of the Judge "is not to decide the numerous questions of law and fact raised by Appellants, but rather to canvas the issues and see whether this settlement "falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d cir. 1983). *See, also, In re Purified Down Products Corp.,* 150 B.R. 519, 522-23 (S.D.N.Y. 1993); *In re*

*Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 287 (Bankr. S.D.N.Y. 1990). The assessment of a settlement only requires identification of the issues and controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather*, 44 B.R. at 470.

19. In considering a proposed settlement, the Court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if in order to approve a settlement, Bankruptcy Courts were required to conduct an exhaustive investigation in determination of the underlying claims" in order to approve a settlement. *Purified Down Products,* 150 B.R. 522-523. In *Carla Leather*, the Court explained the policy underlying the abridged review of settlements in bankruptcy as follows:

> "The very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise. This could hardly be achieved if the test and a hearing for approval meant establishing success or failure to a certainty."

*Carla Leather*, 34 B.R. at 470; *See, also, Purified Down Products,* 150 B.R. at 522-523.

20. In evaluating the propriety of a settlement in concert with the foregoing factors, the Court need not conduct a trial on the merits (nor a "mini-trial", nor a "rehearsal" of the trial"), to actually resolve the extant factual and legal issues. The Court must simply determine whether, considering all of the relevant issues, the settlement is reasonable. *Neiman v. Stein,* 464 F.2d 689, 692 (2d. Cir. 1972). *See, also*, International Distribution Centers, Inc., 103 B.R. 420, 423 (S.D.N.Y. 1989); *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) ("*Drexel I").* These issues may include the Court's familiarity with the history of the case, the complexity of the claims alleged, the status of the parties, and the context in which the claims arose. *See, Anderson*, 390 U.S. at 144; *Purified Down Products*, 150 B.R. at 519, 525; *International Distribution Centers*, 103 B.R. at 423.

443331

21. The settlement evaluation process is not designed to substitute the Court's judgment for that of the Debtor. *Carla Leather*, 44 B.R. at 465. While the Court is not expected to "rubber stamp", the Debtor's proposed settlement, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), the Court should give considerable weight to the Debtor's informed judgment that a compromise is fair and equitable. *Anderson*, 390 U.S. at 444; *International Distribution Centers*, 103 B.R. at 423; *Drexel I*, 134 B.R. at 496; *Carla Leather*, 44 B.R. at 472. As articulated by the District Court in *International Distribution Centers,* when determining the wisdom of a compromise, the Court should give weight to not only the Debtor's opinion, but to those of other counsel to a settlement as well. *International Distribution Centers*, 103 B.R. at 423. Ultimately, a Court should consider both the proponent's opinions as well as its own independent valuation of the arguments for and against the settlement in order to determine whether a settlement should be approved. *Purified Down Products*, 150 B.R. at 523.

22. The Court, apprised of the facts of the controversy and risks and costs of litigation, is bestowed with broad discretion to approve settlements which fall within the range of reasonableness. *Purified Down Products*, 150 B.R. at 523-24; *In re Texaco, Inc.,* 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988). The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances. *See, W.T. Grant*, 699 F. 2d at 6; *Newman & Stein*, 464 F2d at 393; *Purified Down Products*, 150 B.R. at 523-24. The concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion". *Newman v. Stein*, 464 F2d at 693. Thus the Court need not insist upon the best possible settlement, but may approve a settlement that was within the range of reasonableness under the circumstances.

23. In deciding whether a proposed compromise is fair and equitable, reasonable and in the best interest of creditors, Courts in the Second Circuit follow the analysis first articulated by the Supreme Court in *Anderson*, is developed and applied by the case law. In so following, Courts judge a proposed settlement based on consideration of some or all of the following factors:

> (i) The relative benefits to be received by creditors under the proposed settlement;
>
> (ii) The likelihood of success in litigation compared to the present and future benefits offered by the proposed settlement;
>
> (iii) The prospect of complex and protracted litigation if settlement is not approved;
>
> (iv) The attendant expense, inconvenience and delay of litigation;
>
> (v) The probable difficulties of collecting on any judgment that might be obtained;
>
> (vi) The competency and experience of counsel who support the proposed settlement;
>
> (vii) The extent to which the settlement is a product of arms-length bargaining and not the product of fraud or collusion;
>
> (viii) The nature and breadth of any releases to be issued as a result of the proposed settlement; and
>
> (ix) The paramount interest of the creditors and proper deference to their reasonable views.

*See, City of Detroit v. Grinnell Corp.*, 495 F2d 448, 463 (2d Cir. 1974); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993); *In re Purified Down Products,* 150 B.R. at 522; *International Distribution Centers,* 103 B.R. at 422; *In re Fugazy*, 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *Drexel I,* 134 B.R. at 497; *In re Drexel Burnham Lambert Group,* 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991) ("Drexel II"); *Crowthers McCall,* 102 B.R. at 387; *Texaco,* 84 B.R. at 901; *Lion Capital Group, Inc.*, 49 B.R. 163, 173 (Bankr. S.D.N.Y. 1985); *Carla Leather,* 44

B.R. at 466; *In re W.T. Grant Company*, 699 F2d, 599 (2d. Cir. 1983); *See, also, In re Jackson Brewing Company,* 624 F.2d 599, 602 (5th Cir. 1980); *Drexel v. Loomis*, 35 F.2d 800, 808 (8th Cir. 1929).

24. Application of the relevant factors should leave this Court with the inescapable conclusion that the settlement and compromises embodied in the proposed settlement between the Debtor and M&T are well above the lowest point in range of reasonableness, and should be approved as fair and equitable and in the best interest of creditors.

25. The relative benefits to the estate under the proposed settlement clearly and substantially outweigh whatever benefits could inure to creditors if the litigation continues. The immediate benefit of the proposed settlement is the Debtor obtaining the ability to adequately finance their operations and purchase inventory and complete sales through the funding to be provided by Funding.

26. Simply put, if the dismissal of the pending Adversary Proceeding is not approved by this Court, then the acquisition of M&T's position by Champion Funding will not occur. In that event, the Debtor would be constrained to go forward in its efforts to have the Debtor in possession priming financing approved. While the Debtor believes that it could persuade the Court to approve the priming financing, the Debtor also recognizes the difficulties which it will encounter in persuading the Court that priming financing is appropriate herein. The Debtor's efforts in this regard are dependent upon the Court adopting the view of its expert, Bel Air Partners, that the value of the Dealership Agreement with Bentley, is zero. If the Court adopts this position, the Debtor would not be required to provide any adequate protection to M&T for the priming of its lien on the Dealership Agreement. This is because if the interest is valueless, the Debtor contends there is no need to provide adequate protection of valueless interest.

443331

27. The Debtor recognizes that its litigation position is not free from doubt. When the prospects of success with respect to the DIP Motion are weighed against the certainty of substantial and immediate access to capital and the ability to replenish the Debtor's inventory through financing to be provided by Funding, the Debtor believes that the benefits of dismissing the Adversary Proceeding and facilitating Funding's acquisition of M&T's obligations outweighs any benefit to be derived from the claims in the Adversary Proceeding.[1]

28. The Debtor believes that obtaining an adequate source of floor plan financing is a prerequisite to the company's emergence as a going concern in the Chapter 11 case. On the one hand, the costs and likelihood of success on the priming DIP Motion are substantial, and the Debtor's failure to persuade the Court to adopt its position could prove fatal to the company's ability to survive the Chapter 11 case. An adverse decision on the DIP Financing Motion could ring the death knell for the Debtor. When the uncertainty of the DIP litigation is weighed against the certainty of financing to be provided by Funding, the Debtor has determined that the certainty outweighs the potential benefits of proceeding with its litigation.

29. With respect to the merits of the preference litigation set forth in the Adversary Proceeding, it is clear that the litigation with M&T, will be complex, costly and protracted. The Debtor believes that even if it were successful in whole or in part, the benefits to creditors would be greatly reduced by the significant time and costs of litigating the action.

30. As the Court is aware, M&T has made a motion to dismiss the pending litigation, or in the alternative, for summary judgment. M&T's position is that the transfer of the certificates of title by the Debtor to M&T did not constitute a transfer of the Debtor's interest in property; rather, M&T contends that the transfer occurred when the security interest was granted.

---

1 If the transaction closes as contemplated, the Debtor will not proceed with the request for DIP priming but will enter onto a consensual cash collateral agreement with Funding to finance its business.

M&T's position that the transfer of the certificates of title is irrelevant to the creation of perfection of M&T's liens appears supported by commentary to the New York version of the Uniform Commercial Code, Section 9-311(d). The arguments and obstacles set forth in M&T's Motion to Dismiss represent a further complexity which was weighed by the Debtor in determining that the voluntary dismissal of the Adversary Proceeding was preferable to continued litigation.

31. The proposed dismissal of the Adversary Proceeding to facilitate the transaction between M&T and Funding is the product of arms-length negotiations, and not the product of fraud or collusion. The Debtor, M&T and Funding, were all represented by counsel throughout the negotiations and the parties dealt with each other in good faith and at arms length. As a result of negotiation efforts, both M&T and the Debtor are giving up significant rights in return for the value certainty, finality and closure with respect to the issues between the parties. Finally, the Debtor believes that the paramount interest of creditors are well taken into account in connection with the proposed settlement. The settlement and dismissal of the Adversary Proceeding provide the best possible way for the Debtor to emerge as a going concern, fund a Plan of Reorganization, preserve jobs of its employees, provide distributions to creditors and continue to do business with its numerous vendors. The Debtor believes that this settlement fulfills its responsibilities to its creditors expeditiously, and in a cost-effective manner.

32. Federal Rule of Bankruptcy Procedure 7041(a)(2) provides:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the Plaintiff's request only by court order on terms that the court considers proper…Unless the court states otherwise, a dismissal under this paragraph (2) is without prejudice.

33.     For the reasons set forth above, the Debtor believes that the dismissal of the pending Adversary Proceeding with prejudice to allow Funding's acquisition of the M&T position is proper and in the Debtor's best interest, as well as in the best interest of the estate. Inasmuch as the dismissal with prejudice will pave the way for the Debtor to move toward a Plan of Reorganization, the Debtor submits that the dismissal with prejudice is justified.

34.     The Debtor is not aware of any grounds to potentially challenge the claims and liens held by M&T other than the grounds set forth in the Adversary Proceeding.  For the reasons stated above, the Debtor believes that foregoing the claims in the Adversary Proceeding for the certainty of a long-term source of financing is appropriate in this case..

35.     Accordingly, the Debtor requests that the settlement be approved, and that the Stipulation voluntarily dismissing the claims against M&T with prejudice, in the form annexed hereto as Exhibit A, be approved by the Court.

**WHEREFORE**, the Debtor respectfully requests that the proposed compromise with M&T resulting in the voluntary dismissal of the Adversary Proceeding with Prejudice be approved by the Court, along with such other and further relief as the Court deems just and proper.

**DATED:**  New York, New York
             July  22, 2009

                              **ROBINSON BROG LEINWAND GREENE**
                                **GENOVESE & GLUCK P.C.**
                              **Attorneys for the Debtor**
                              1345 Avenue of the Americas
                              New York, New York 10105
                              212-603-6300

                              By:_/s/ Robert R. Leinwand_____

443331

**Robert R. Leinwand**

443331